IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-76-D

| | | |
|---|---|---|
| MARIE BARBOUR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FIDELITY LIFE ASSOCIATION | ) | |
| | ) | |
| Defendant. | ) | |

On January 24, 2018, Marie Barbour ("Barbour" or "plaintiff") filed a complaint against Fidelity Life Association ("Fidelity Life" or "defendant") in Johnston County Superior Court for breach of contract and violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. [D.E. 1-2]. On February 23, 2018, Fidelity Life removed the action to this court [D.E. 1]. On September 27, 2018, Fidelity Life moved for summary judgment on both claims [D.E. 16], filed a statement of material facts [D.E. 17] and filed a memorandum in support [D.E. 18]. On October 15, 2018, Barbour responded in opposition [D.E. 22]. On November 2, 2018, Fidelity Life replied [D.E. 24]. As explained below, the court grants Fidelity Life's motion for summary judgment.

I.

On October 7, 2017, James Barbour tragically drowned while attempting to save two people in the Atlantic Ocean off the North Carolina coast. See [D.E. 17] ¶ 1; [D.E. 20] ¶ 1. When he died, James Barbour was insured under an accidental death policy that Fidelity Life issued. [D.E. 17] ¶ 2. Marie Barbour, his wife, was the primary beneficiary. [D.E. 17] ¶¶ 2–3; Villanueva Decl., Ex.

1 [D.E. 19] 30–37. On October 23, 2017, Barbour—who at the time of his death was separated from James Barbour—called Fidelity Life and reported his death. See [D.E. 17] ¶ 4. On October 25, 2017, Fidelity Life erroneously informed Barbour that her husband's death was not covered by the policy because he died of natural causes, rather than due to an accident. See id. ¶ 5; Calgaro Decl., Ex. 1 [D.E. 19] 8. Although Fidelity Life characterizes this statement as "inadvertent," Barbour disputes that this statement was an innocent mistake. See [D.E. 17]; [D.E. 20] ¶ 5; Calgaro Decl. [D.E. 19] ¶ 5–6. In the same letter, Fidelity Life requested that Barbour complete a claim form to receive a refund of unearned premiums and submit documentation of her husband's death. See [D.E. 17] ¶ 5; Calgaro Decl., Ex. 1 [D.E. 19] 8. On November 21, 2017, Fidelity Life received the completed claim form. See [D.E. 17] ¶ 6; Calgaro Decl. [D.E. 19] ¶ 8. After receiving the claim form, Fidelity Life began investigating Barbour's claim and the circumstances of James Barbour's death. See [D.E. 17] ¶¶ 7–8. Fidelity Life retained Diligence International Group ("Diligence") to investigate Barbour's claim. See id. ¶ 8.

Fidelity Life updated Barbour concerning its review of her claim at regular intervals during the investigation. See id. ¶ 15. On November 22, 2017, December 12, 2017, and January 15, 2018, Fidelity Life "advised [Barbour] of the status of her claim." Id.; Calgaro Decl. [D.E. 19] ¶¶ 12–16; Calgaro Decl., Ex. 4 [D.E. 19] 18–20. During this time, Diligence investigated Barbour's claim. The investigation included interviewing Barbour on December 11, 2017, and obtaining various medical records concerning James Barbour's death. See [D.E. 17] ¶¶ 8, 10–11, 14, 16; Calgaro Decl., Ex. 2 [D.E. 19] 10–11; Calgaro Decl., Ex. 3 [D.E. 19] 13–16.

On December 18, 2017, Barbour consulted a lawyer to evaluate her legal options. See Ex. 3 [D.E. 21] 43. On January 10, 2018, Barbour filed this action in state court. See Ex. 1 [D.E. 21] 8. On January 24, 2018, Barbour filed an amended complaint seeking relief for breach of contract

and UDTPA violations [D.E. 1-2]. On February 2, 2018, Barbour served her complaint on Fidelity Life. See [D.E. 18] 9.

On February 5, 2018, Diligence submitted its final report to Fidelity Life. See [D.E. 17] ¶ 17; Calgaro Decl. [D.E. 19] ¶ 19; Calgaro Decl., Ex. 5 [D.E. 19] 22–27. On February 5, 2018, Fidelity Life paid Barbour the full accidental death benefit, plus interest, in a total amount of $504,226.33. Compare [D.E. 17] ¶ 20, and Calgaro Decl. [D.E. 19] ¶ 20, with [D.E. 20] ¶ 20. On September 27, 2018, Fidelity Life moved for summary judgment [D.E. 16].

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmovant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise,

a "mere ... scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). North Carolina law applies to both claims. See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 601 (4th Cir. 2004); Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, S.E.2d 655, 656 (1980). Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005); Romfo v. Scottsdale Ins. Co., No. 5:17-CV-422-D, 2017 WL 6611511, at *2 (E.D.N.C. Dec. 27, 2017) (unpublished). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Twin City Fire Ins. Co., 433 F.3d at 369. If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Id. (quotation omitted).

A.

To prove breach of contract under North Carolina law, a plaintiff must show (1) the existence of a valid contract, and (2) a breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), disc. rev. denied, 360 N.C. 290, 627 S.E.2d 621 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); LRP Hotels of Carolina, LLC v. Westfield Ins. Co., No. 4:13-CV-94-D, 2014 WL 5581049, at *2 (E.D.N.C. Oct. 31, 2014) (unpublished). A breach of contract occurs when there is "non-performance, unless the person

4

charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, No. 7:16-CV-249-D, 2016 WL 6330389, at *4 (E.D.N.C. Oct. 27, 2016) (unpublished) (alterations and quotations omitted), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. See Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). The insured party "has the burden of bringing itself within the insuring language of the policy." Cleveland Constr., Inc. v. Fireman's Fund Ins. Co., 819 F. Supp. 2d 477, 481 (W.D.N.C. 2011) (quotation omitted).

Under North Carolina law, interpreting a written insurance contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting a written insurance policy, "the goal of construction is to arrive at the intent of the parties when the policy was issued." Gaston Cty., 351 N.C. at 299, 524 S.E.2d at 563 (quotation omitted); see Stewart Eng'g, Inc. v. Cont'l Cas. Co., No. 5:15-CV-377-D, 2018 WL 1403612, at *3–4 (E.D.N.C. Mar. 20, 2018) (unpublished), aff'd, No. 18-1386, 2018 WL 5832805 (4th Cir. Nov. 7, 2018) (per curiam) (unpublished); Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 802 S.E.2d 173, 175 (N.C. Ct. App. 2017). Moreover, courts construe coverage provisions broadly and exclusionary provisions narrowly. See Plum Props., 802 S.E.2d at 175–76.

As for Barbour's breach of contract claim, on February 5, 2018, Fidelity Life paid the full accidental death benefit due under the policy with interest. See [D.E. 17] ¶ 20; Calgaro Decl. [D.E. 19] ¶ 20. Although Barbour denies that Fidelity Life did so in a timely fashion, she admits that she

5

received the payment on February 5, 2018. See [D.E. 22] 6, 8–9. Thus, it is undisputed that Fidelity Life paid the contract's benefit. Accordingly, no genuine issue of material fact exists concerning whether Fidelity Life breached the terms of the contract with Barbour. It did not.

In opposition, Barbour argues that Fidelity Life denied her claim on October 25, 2017, when it informed her that the policy did not cover her claim. See [D.E. 22] 2. The undisputed evidence shows, however, that Barbour did not submit a claim form until November 21, 2017. See [D.E. 17] ¶ 6; [D.E. 20] ¶ 6. Thus, Fidelity Life could not have denied Barbour's claim on October 25, 2017, because she had not yet filed a claim. See, e.g., Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771-D, 2018 WL 1473427, at *6 (E.D.N.C. Mar. 24, 2018) (unpublished). Accordingly, the court grants Fidelity Life's motion for summary judgment concerning the breach of contract claim.

B.

Barbour alleges a UDTPA claim predicated on violations of N.C. Gen. Stat. § 58-63-15(11), which defines unfair settlement practices in the context of insurance. See [D.E. 1-2] ¶¶ 38–52. Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under the UDTPA. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 69–71, 529 S.E.2d 676, 682–83 (2000); see Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins. Co., No. 7:12-CV-107-FL, 2013 WL 6080191, at *8 (E.D.N.C. Nov. 19, 2013) (unpublished).

To establish a violation of the UDTPA, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see N.C. Gen. Stat. § 75-1.1; Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009). "[W]hether an act or practice is an unfair or deceptive

6

practice ... is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). Conduct violating N.C. Gen. Stat. § 58-63-15(11) violates the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 70–71, 653 S.E.2d 393, 398–99 (2007); Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002).

A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]" by itself. Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 41–42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Co., 559 F.3d 212, 224 (4th Cir. 2009); Walker, 362 N.C. at 72, 653 S.E.2d at 399; Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a ... UDTPA claim ... because awarding punitive or treble damages would destroy the parties' bargain ...." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). However, if substantial aggravating circumstances accompany a breach of contract, then those circumstances can create an UDTPA claim. Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700; see Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981).

7

Generally, some element of deception, like forged documents, lies, or fraudulent inducements, must be present. See Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

As for Barbour's UDPTA claim, Barbour alleges that Fidelity Life engaged in numerous unfair claim settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11). See [D.E. 1-2] ¶¶ 38–52. Specifically, Barbour alleges the following statutory violations:

>  a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
> 
> b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> 
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> 
> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .
> 
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> 
> g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; . . . and
> 
> n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for offer of a compromise settlement.

N.C. Gen. Stat. § 58-63-15(11); see [D.E. 22] 14–15.

As for subsection (a), Barbour contends that the October 25, 2017 letter constituted a misrepresentation because it caused her to believe she could recover only unearned premiums. See [D.E. 22] 15. Fidelity Life concedes that this communication was incorrect but characterizes it as inadvertent. See [D.E. 18] 15 n.6. Barbour also argues that Fidelity Life's letters of November 22,

8

2017, December 12, 2017, and January 15, 2018, misrepresented that Fidelity Life would contact James Barbour's medical providers. See [D.E. 22] 4. A practice is deceptive "if it has the tendency to deceive." Gray, 352 N.C. at 68, 529 S.E.2d at 681. A "defendant's intent or good faith is irrelevant." Bartolomeo, 889 F.2d at 535. None of these statements had a tendency to deceive. As for the letter of October 25, 2017, Barbour does not cite any evidence that would create a genuine issue of material fact concerning whether this statement had a tendency to deceive. As for Fidelity Life's update letters, the letters stated only that Fidelity Life would contact various "medical sources." See [D.E. 24] 10 n.3; Calgaro Decl., Ex. 4 [D.E. 19] 18–20. These "sources" do not necessarily include James Barbour's medical providers. See [D.E. 22] 4.

Alternatively, even assuming that Fidelity Life's erroneous letter of October 25, 2017, had a tendency to deceive, Barbour has not shown any injury because Fidelity Life ultimately paid the full accidental death benefit with interest.[1] Actual injury is a required element of an UDTPA claim. See, e.g., Gray, 352 N.C. at 68, 529 S.E.2d at 681; Burrell, 189 N.C. App. 104, 111, 657 S.E.2d 712, 717. Barbour argues that Fidelity Life's voluntary payment of "contract damages" cannot obviate her injuries for purposes of her UDTPA claim. See [D.E. 22] 17–18. Fidelity Life, however, did not pay "contract damages" because it never breached the contract. Thus, Garlock v. Henson, 112 N.C. App. 243, 435 S.E.2d 114 (1993), which involved a breach of contract, does not apply.

---

[1] Under North Carolina law, it is unclear whether violating N.C. Gen. Stat. § 58-63-15(11) is "a per se violation of [section] 75-1.1, or instead whether that conduct satisfies [section] 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of [section] 75-1.1." Elliot, 883 F.3d at 396 n.7. A federal court sitting in diversity should not create or extend a state's public policy. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007). Accordingly, Barbour must show that the alleged misrepresentations proximately caused her actual injury to establish a violation of the UDTPA. She has failed to do so. This principle applies to each of Barbour's remaining allegations under N.C. Gen. Stat. § 58-63-15(11).

9

Similarly, the alleged misrepresentations in Fidelity Life's update letters did not proximately cause any injuries to Barbour. See Hawkins v. Berkshire Life Ins. Co., No. 4:97-CV-312, 1999 WL 1939262, at *2 (M.D.N.C. Jan. 22, 1999) (unpublished).

In opposition, Barbour argues that her attorneys' fees and "strain and emotional distress" following the letter of October 25, 2017, constitute damages under UDTPA. [D.E. 22] 16–17. However, assuming without deciding that these items satisfy the UDTPA's actual injury element, see Coley v. Champion Home Builders Co., 162 N.C. App. 163, 166, 590 S.E.2d 20, 22 (2004), Barbour has not shown that her actual reliance on any of the alleged misrepresentations proximately caused her injuries. For an UDTPA claim based on an alleged misrepresentation, a plaintiff must show actual reliance. See Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 89, 747 S.E.2d 220, 226–27 (2013); Fazzari v. Infinity Partners, LLC, 235 N.C. App. 233, 243–44, 762 S.E.2d 237, 244 (2014); Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009); see also Ferro v. Volvo Penta of the Ams., LLC, 731 F. App'x 208, 211 (4th Cir. 2018) (per curiam) (unpublished). Thus, her claim under subsection (a) fails. Cf. Fazzari, 235 N.C. App. at 244, 762 S.E.2d at 244 ("Where a plaintiff cannot forecast evidence of actual reliance, summary judgment for the defendants is proper.").

As for subsection (b), Barbour argues that she filed her claim on October 23, 2017, when she called Fidelity Life to inform it of James Barbour's death. See [D.E. 22] 2. Barbour, however, did not return a completed claim form until November 21, 2017. See [D.E. 17] ¶ 6; [D.E. 20] ¶ 6. Fidelity Life began investigating the circumstances of James Barbour's death upon receiving the form. See [D.E. 17] ¶¶ 6–7. When Barbour called to inquire concerning the claim on December 11, 2017, Fidelity Life provided an update on December 12, 2017. See [D.E. 17] ¶¶ 12–13. On February 5, 2018, Fidelity Life completed the investigation and paid the full amount due under the

10

insurance policy with interest. See [D.E. 17] ¶¶ 16–17; Calgaro Decl. [D.E. 19] ¶ 20. Simply put, Barbour has not produced any evidence showing that Fidelity Life violated subsection (b). See [D.E. 20] ¶ 7; see, e.g., Majstorovic, 2018 WL 1473427, at *6. Thus, her claim under subsection (b) fails.

As for subsection (c), Barbour has not produced any evidence that supports her prompt investigation claim. Barbour cannot create a genuine issue for trial through mere speculation. See Sharif v. United Airlines, Inc., 841 F.3d 199, 204 (4th Cir. 2016); Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013); Beale, 769 F.2d at 214; cf. Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 611, 630 S.E.2d 221, 232–33 (2006). Moreover, Fidelity Life began investigating her claim within days of receiving the proper form and completed its investigation in less than three months. See [D.E. 17] ¶¶ 6–7, 20; Calgaro Decl. ¶ 20. Thus, her claim under subsection (c) fails.

As for subsection (d), Barbour contends that the October 25, 2017 letter constituted a denial of her claim without a reasonable investigation based upon all available information. See [D.E. 22] 15. However, on October 25, 2017, Barbour had not submitted the required claim form. Thus, the October 25, 2017 letter cannot constitute a denial of her claim. See, e.g., Majstorovic, 2018 WL 1473427, at *6. Once Fidelity Life investigated her claim, it promptly paid her the full amount owed with interest. See [D.E. 17] ¶¶ 16–17. Thus, her claim under subsection (d) fails.

As for subsections (f) and (g), Barbour contends that Fidelity Life only paid the accidental death benefits "upon receiving notice of the instant lawsuit." [D.E. 22] 16. Contrary to Barbour's assertions, on February 5, 2018, Fidelity Life received a final report from Diligence summarizing its investigation, including James Barbour's toxicology report indicating that James was not intoxicated when he died. See [D.E. 17] ¶¶ 17, 20.[2] Even if the toxicology report were publicly

---

[2] The insurance policy generally excluded coverage if the decedent was intoxicated at the time of death. See [D.E. 17] ¶ 14; Villaneuva Decl., Ex. 1 [D.E. 19] 37.

available, as Barbour contends, Fidelity Life conducted a reasonable investigation by retaining Diligence and effected payment on the date it received Diligence's report. See N.C. Gen. Stat. § 63-58-15(11)(f). No evidence suggests that Fidelity Life delayed the investigation to force Barbour to litigate. Indeed, Barbour appears to have contemplated litigation as soon as December 18, 2017, only a few weeks after she returned the completed claim form to Fidelity Life. See Ex. 3 [D.E. 21] 43. Thus, Barbour's claims under subsections (f) and (g) fail. See, e.g., Majstorovic, 2018 WL 1473427, at *6.

As for subsection (n), Barbour's claim rests on her characterization of Fidelity Life's letter of October 25, 2017, as a denial of her claim. See [D.E. 22] 15–16. As discussed, the court rejects this characterization. Fidelity Life never denied Barbour's claim or offered a compromise settlement. Instead, it paid the full amount owed to her with interest. See [D.E. 17] ¶ 20. Thus, Barbour's claim under subsection (n) fails.

Despite its mistaken communication on October 25, 2017, Fidelity Life reasonably investigated Barbour's claim and determined, within less than three months, that the insurance policy covered her claim. Fidelity Life did not engage in any conduct that was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or that otherwise violated the UDTPA. Walker, 362 N.C. at 72, 653 S.E.2d at 399. The court rejects Barbour's attempt to transform her breach of contract claim into a UDTPA violation. See Burrell, 189 N.C. App. at 111, 657 S.E.2d at 717. Fidelity Life is entitled to judgment as a matter of law, and the court grants Fidelity Life's motion for summary judgment on Barbour's UDTPA claim.

III.

In sum, the court GRANTS Fidelity Life's motion for summary judgment [D.E. 16]. The clerk shall close the case.

SO ORDERED. This 8 day of January 2019.

                                                  JAMES C. DEVER III  
                                                  United States District Judge